UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YUN LIU,

Plaintiff,

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES (USCIS),

Defendant.

Case No. 25-cv-02572-WHO

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 9, 18

Plaintiff/Petitioner Yun Liu filed this action under the Mandamus and Venue Act, 28 U.S.C. § 1361 (the "Mandamus Act"), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, seeking an order requiring that the defendant United States Citizenship and Immigration Services ("USCIS") to make a decision on her asylum application, which has been pending for just under three years as of the date of this Order. Liu contends that her interview has been unreasonably delayed, causing her irreparable harm in that her family has been put in limbo, uncertain of how her immigration status will affect her children's college admission process. USCIS responds that this court lacks jurisdiction to decide any of Liu's claims, and even if I could properly decide Liu's APA claim, it has not unreasonably delayed reaching a decision on her asylum application. The parties have cross-moved for summary judgment.

Liu lacks an enforceable right under the Mandamus Act to have the USCIS adjudicate her asylum application within a specific time frame, and she has not set forth facts that support her allegation that the USCIS has unreasonably delayed its adjudication as a matter of law. USCIS's motion for summary judgment is granted, Liu's is denied, and this case is dismissed in its entirety.

United States District Court
Northern District of California

## BACKGROUND

### I. ASYLUM APPLICATION GENERALLY

Liu is a native of China. Complaint ("Compl.") [Dkt. No. 1] ¶ 5; *see also* Declaration of Yu Liu ("First Liu Decl.") [Dkt. No. 9-1] ¶¶ 9-10. Under the Immigration and Nationality Act ("INA"), a noncitizen "who is physically present in the United States or who arrives in the United States" is permitted to apply for asylum in the United States, subject to certain exceptions. 8 U.S.C. § 1158(a)(1). While an asylum application is pending, asylum applicants are eligible to apply for employment authorization and are deemed to be "lawfully present" for the purposes of applying certain benefits. 8 C.F.R. § 208.7(a)(1); *e.g.*, *id.* § 1.3(a)(5) (deeming asylum applicants "lawfully present" for the purpose of applying for social security benefits). Employment authorizations are renewable for a continuous period, in two-year increments. *Id.* § 208.7(a).

Before 1995, regulations permitted asylum applicants to obtain employment authorization documents ("EADs") if USCIS failed to adjudicate their applications within 90 days. Declaration of Brett Lassen ("Lassen Decl.") [Dkt. No. 18-1] ¶¶ 10-12. Because most applications were not decided in 90 days, the former Immigration and Naturalization Service ("INS") began automatically mailing EADs to asylum applicants as soon as the INS received the asylum application. *Id.* ¶ 10. These EADs would be valid for "years before the application was fully adjudicated." *Id.* As a result, asylum caseloads and their processing times grew, as did the filing of non-meritorious or frivolous claims in an effort to secure employment authorization. *Id.*

In 1995, the INS instituted reforms, implementing the "Last-In-First-Out" ("LIFO") scheduling system, where more recently filed cases would be scheduled for interview before older cases. *Id.* ¶ 12. That changed again in 2013-14 to prioritize the processing of unaccompanied child cases. The system changed to "First-In-First-Out" ("FIFO"), but FIFO increased the backlog, *id.* ¶¶ 18-23, and on January 31, 2018, USCIS announced it would return to LIFO, *id.* ¶ 24.

### II. LIU'S ASYLUM APPLICATION

Liu applied for asylum with USCIS on June 21, 2022, and provided necessary biometrics on September 7, 2022. Complaint, Dkt. No. 1, ¶¶ 13-14. Since that date, she says that it has

"never moved an inch." *Id.*, ¶ 15.

Liu's application has always been subject to the "LIFO" system. *See* Declaration of Danielle Lehman ("Lehman Decl.") [Dkt. No. 18-2] Lassen Decl. ¶ 24. According to USCIS records, Liu has not made a request to be placed on the short notice interview list, which is a list maintained by the San Francisco Asylum Office of asylum applicants who are willing to be scheduled for interviews on short notice if an interview slot unexpectedly becomes available. Lehman Decl. ¶ 15. USCIS Asylum Directors may exercise discretion to schedule an urgent cased ahead of other cases where exigent circumstances warrant expedition of an application, but USCIS records reflect that Liu has not requested expedited adjudication pursuant to the process set forth on the USCIS website, *id.* ¶ 16, and Liu does not claim to have ever made such a request. *See generally* Complaint [Dkt. No. 1]; Liu Motion for Summary Judgment [Dkt. No. 9]; Opposition/Response to USCIS Motion for Summary Judgment [Dkt. No. 19].

While Liu awaits a decision on her asylum application, she is eligible to apply for an EAD as defined by 8 C.F.R. §§ 274a.12 and 274a.13 under the classification of "pending asylum application." Lehman Decl. ¶ 17. Liu filed her initial Form I-765, the Application for Employment Authorization, on December 7, 2022, and USCIS approved it on February 7, 2023. It was set to expire on February 2, 2025, but Liu applied to renew her EAD on October 12, 2024. That renewal application was still pending as of June 18, 2025. *Id.* ¶ 18. Plaintiff may renew her EAD in 5-year increments for the entire pendency of her asylum application. *See* 8 C.F.R. § 208.7(b); Lehman Decl. ¶ 19.

On March 14, 2025, Liu filed this action against USCIS, bringing claims for failure to complete her asylum application "within a reasonable time" in violation of 5 U.S.C. § 555 and 5 U.S.C. § 706(2), and seeking a writ of mandamus ordering USCIS to issue a decision on her asylum application. On May 20, 2025, without the benefit of any discovery, Liu filed a motion for summary judgment. Liu Motion for Summary Judgment ("Liu Motion") [Dkt. No. 9]. On June 20, 2025, USCIS filed its cross-motion for summary judgment and opposition to Liu's Motion. USCIS Cross Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("USCIS Motion") [Dkt. No. 18]. On July 6, 2025, Liu filed her own

United States District Court
Northern District of California

Opposition/Response to the USCIS Motion, apparently without the aid of counsel. *See* Opposition/Response re USCIS Motion ("Liu Oppo.") [Dkt. No. 19] (filed by Yun Liu).[1]

**LEGAL STANDARD**

The court must grant summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.' ") (quoting *Celotex*, 477 U.S. at 325). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

If the moving party meets its initial burden, then the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1103. "Once the moving party carries its initial burden, the adverse party may not rest upon the

[1] After reviewing the parties' submissions, I determined that the matter was suitable for resolution without oral argument and vacated the hearing that had been set for August 6, 2025, pursuant to Civ. L.R. 7-1(b).

mere allegations or denials of the adverse party's pleading, but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076 (cleaned up). If the non-moving party does not produce evidence to show a genuine issue of material fact, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23.

In ruling on a motion for summary judgment, the court does not make credibility determinations or weigh conflicting evidence. Instead, it views the evidence in the light most favorable to the non-moving party and draws all factual inferences in the non-moving party's favor. *E.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).

## DISCUSSION

### I. INCONSISTENCIES ACROSS PLAINTIFF'S PAPERS

Before addressing the substance of the parties' cross-motions, I address inconsistencies that pervade Liu's papers and are only modestly clarified by her accompanying declarations. First, there is the issue of pervasive references to individuals who are not parties in this case. The Complaint, filed for Liu through her attorney Zheng "Andy" Liu (hereafter, "Zheng Liu"), repeatedly refers to Liu as "he" and refers to "his wife" and "their two children." *See e.g.*, Compl. ¶ 1 ("Plaintiff and *his* family have spent . . . the last two and a half years alone waiting for their interview[.]"), ¶ 2 ("Plaintiff contacted USCIS several times but has received nothing other than no useful information about his case status. Neither had USCIS provided any explanation for why her case has stalled."), ¶ 4 ("Plaintiff respectfully requests the Court issue a writ of mandamus ordering USCIS to issue a decision on his Asylum Application within 60 days[.]"), ¶ 19 ("Plaintiff is being irreparably harmed by USCIS's unreasonable delay in processing his asylum applications; because now the legal statuses of Plaintiff, his wife, and their two children in this company remain in limbo.").

But the Complaint also refers to Liu as "she" and "her". *See e.g.*, *id.* ¶ 2 ("[n]either had USCIS provided any explanation for why her case has stalled"), ¶ 5 ("Plaintiff is a citizen of the People's Republic of China; she, her husband, and their two children all reside in the San

Francisco Bay Area"), ¶ 13 ("[o]n September 7, 2022, Plaintiff provided her biometric to USCIS"), ¶ 16 ("Yun Liu never received anything else from USCIS after her biometrics appointment notice . . . [s]he contacted USCIS several times for updates but received no useful information about her case status."), ¶ 17 ("the immigration status of Plaintiff, her husband, and two children have remained in limbo."). Sometimes, the Complaint refers to Liu using female pronouns in one paragraph, and two paragraphs later, refers to Liu using male pronouns. Liu's declarations clarify that she is the named plaintiff, that she has a husband and two children that live in the San Francisco Bay Area, that her "family's immigration status is in question," and with her children "applying to college around the country," Liu and her husband are "concerned over our immigration status affecting their odds of getting accepted to their dream school." Declaration of Yun Liu ("First Liu Decl.") [Dkt. No. 9-1] ¶¶ 16-17; Declaration of Yun Liu ("Second Liu Decl.") [Dkt. No. 19-1].

Liu's purpose for filing this suit is also muddied. Her complaint and Motion for Summary Judgment set forth straightforward challenges to the length of delay in processing her asylum application, but declarations Liu submitted alongside her Motion for Summary Judgment and in response to USCIS's cross-motion suggest that she is concerned that USCIS will perceive her asylum application to be "false" because her application listed "Mr. Dongquan Jin, her wife[2] Ms. Kelly Lu, or someone else at their immigration service office, as the 'preparer.'" First Liu Decl. ¶ 2. Apparently, Jin and Lu "have been accused of aiding and abetting others to make false statements in . . . people's asylum applications." First Liu Decl. ¶ 3. Criminal charges to this end under 18 U.S.C. §§ 1546(a) are proceeding before the Hon. Charles Breyer in *USA v. Jin*, 23-cr-472-CRB (N.D. Cal. filed Aug. 20, 2024), Dkt. No. 1 (Indictment).

In her first declaration, Liu assures me that "[her] asylum application is … genuine, and every statement and exhibit [she] submitted in support of [her] asylum application is true." First Liu Decl. ¶ 3. She asks that "at the very minimum [her] asylum application should be examined

[2] There are a number of pronoun inconsistencies, both within Liu's declarations, the Complaint, and the Liu Motion.

on its own merit[.]" *Id.* ¶ 5. She appears to fear that the process of her asylum application may have been interrupted or encumbered because Jin and Lu helped her prepare it, and seeks reassurance from USCIS that this is not the case.[3]

Liu also points out that her attorney, Zheng Liu—who filed this case for her and drafted her motion for summary judgment but did not file a response to USCIS's cross-motion or a Reply in support of Liu's motion—also represents Jin in the criminal case before Judge Breyer. According to her declaration accompanying the Motion for Summary Judgment, Liu was, at some point, made aware of this fact. Liu Decl. ¶ 5 ("I have been told that my attorney Mr. Zheng Liu also represents Mr. Jin in his defense in case number 3:24-cr-00472, and I understand the nature of Mr. Liu's representations of me in this case and Mr. Jin in the other case.").

The inconsistencies discussed above do not inspire confidence. But even if the papers were properly presented, the undisputed facts support summary judgment for the defendant USCIS.

## II. USCIS IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR

### A. Subject Matter Jurisdiction

To obtain relief under the mandamus statute, a plaintiff must establish that "(1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997). USCIS contends that this court lacks subject matter jurisdiction because 8 U.S.C. § 1158 expressly disclaims any enforceable timeframe for adjudication, meaning there is "no clear non-discretionary duty" for this court to compel. USCIS Motion 12-13. It points out that courts in this circuit have held that § 1158(d)(7) forecloses relief under the Mandamus Act. USCIS Motion 12 (collecting cases).

Courts in this circuit in addressing § 1158(d)(7) have repeatedly declined to conclude that a private right of action exists to enforce the timing requirements set forth by § 1158(d)(5)(A).

[3]Her concern is not reflected in the Complaint. *See generally* Complaint [Dkt. No. 1]. It appears briefly in the "factual background" section of Liu's Motion for Summary Judgment but does not factor into the legal arguments set forth therein. *See* Liu Motion 4-5. USCIS does not address the topic of Jin or Lu's involvement in Liu's asylum application process in its cross-motion.

United States District Court
Northern District of California

But they have nonetheless concluded that courts have jurisdiction to review the agency's actions under the APA. *See Su v. Mayorkas*, 698 F. Supp. 3d 1168, 1175 (N.D. Cal. 2023) (collecting cases for the rule that "the prohibition against a private right of action articulated in Section 1158(d)(7) does not preclude judicial review of USCIS's inaction under the APA, nor does it include the jurisdiction-stripping language found elsewhere in the [INA].") (internal quotations omitted). I will follow those courts that have held that whether the USCIS has a clear duty is a question of "the essential ingredients of a federal claim" under the APA, not "federal-court 'subject-matter' jurisdiction over a controversy." *See Dang v. Mayorkas*, No. 23-cv-02212-LB, WL 2023 8007993, *3 (N.D. Cal. Nov. 17, 2023) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006)).

**B. Mandamus Act (28 U.S.C. § 1361)**

USCIS argues that Liu has no right to mandamus relief under 28 U.S.C. § 1361 in this case. USCIS Motion 12-13. The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action ... to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Again, "[m]andamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003) (internal quotation omitted).

Courts have found that 8 U.S.C. § 1158(d)(5)(A) cannot form the basis for mandamus relief because "the relevant statute makes clear that the 45-day rule is not a right enforceable by the applicant. The Ninth Circuit has held that identical language in other immigration statutes foreclose mandamus relief." *Alaei v. Holder*, No. 2:15-cv-08906-ODW (JPRx), 2016 WL 3024103 (C.D. Cal. May 26, 2016) (citing *Campos v. I.N.S.*, 62 F.3d 311, 313-14 (9th Cir. 1995)); *see also Yan*, 2023 WL 4053410, at *6 (same); *Su*, 698 F. Supp. 3d at 1176 (same). Liu has cited no authority to the contrary, and I have found none. Accordingly, Liu cannot state a claim under the Mandamus Act, and USCIS is entitled to summary judgment on this claim.

**C. Administrative Procedure Act**

Courts in this district have held that § 1158(d)(7) forecloses relief under the Mandamus Act but not under the APA. *Su*, 2023 WL 7209630, at *4–5 (collecting cases); *Ou v. Johnson*, No. 15-CV-03936-BLF, 2016 WL 7238850, at *2 (N.D. Cal. Feb. 16, 2016) (same). This is because the APA provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." *Ou*, 2016 WL 7238850, at *2 (quoting 5 U.S.C. § 555(b)).

The dispositive question is whether USCIS has "unreasonably delayed in performing its duty." *Vaz*, 33 F.4th at 1135. To answer this question, courts turn to the "so-called *TRAC* factors." *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997). Those factors are:

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 507 n.7 (cleaned up).

I find that the *TRAC* factors favor USCIS. Summary judgment shall be granted in its favor on Liu's APA claim as well.

**1. Rule of Reason**

"The most important *TRAC* factor is the first factor, the 'rule of reason,' though it, like the others, is not itself determinative." *Cmty. Voice v. United States EPA (In re Cmty. Voice)*, 878 F.3d 779, 786 (9th Cir. 2017). This factor "requires that the time it takes for the agency to act is governed by a 'rule of reason.' " *Ray v. Cuccinelli*, No. 20-cv-06279-JSC, 2020 WL 6462398 at *8 (N.D. Cal. Nov. 3, 2020).

In the context of asylum applications, courts in this circuit have consistently held that USCIS's prioritization system known as "last in first out" (referred to as "LIFO") provides a "persuasive rule of reason." *See* Declaration of Brett Lassen ("Lassen Decl.") [Dkt. No. 18-1] ¶¶ 25 (declaration offered by Acting Chief of the Asylum Division within USCIS, explaining how

USCIS returned to the LIFO system in 2018, after trying other methods for reducing asylum application backlog); *see also Dang v. Mayorkas*, No. 23-CV-02212-LB, 2023 WL 8007993, at *4 (N.D. Cal. Nov. 17, 2023) (observing that courts in this circuit have found LIFO to be a "persuasive rule of reason" satisfying the first *TRAC* factor); *Su*, 698 F. Supp. 3d 1168 (collecting cases).

Under the LIFO system, the Asylum division "schedule[s] recently filed cases for interview ahead of older cases[.]" Lassen Decl. ¶ 12. USCIS did this to "reduc[e] the incentive engendered by the backlog to file non-meritorious asylum applications" to file applications "primarily" to obtain an "[employment authorization document]". *Id.* ¶¶ 12-13. The LIFO policy has been in place since 2018, meaning that during the pendency of Liu's asylum application, USCIS has been employing the LIFO policy. Aside from the LIFO policy, courts in this circuit have "generally found [asylum-application] delays of four years or less not to be unreasonable under the APA." *Ou*, 2016 WL 7238850, at *3 (collecting cases); *Su*, 2023 WL 7209630, at *6 ("even delays of over five years" can be reasonable). Liu offers no argument as to why this rule of reason should be rejected. *See generally* Liu Motion. The first factor favors USCIS.

**2. Congressional timetable**

"The second *TRAC* factor considers whether Congress has provided an indication of the speed with which it expects an agency to act." *Jain v. Jaddou*, No. 21-cv-03115-VKD, 2023 WL 2769094 at *6 (N.D. Cal. Mar. 31, 2023). Courts have acknowledged that Congress has "provided a clear timetable for the processing of asylum applications," including 8 U.S.C. § 1158(d)(5)(A)'s expectation that interviews be scheduled within 45 days. *Varol*, 420 F. Supp. 3d at 1097. However, those same courts have also held that such "timing requirements are not mandatory" and "d[o] not outweigh the rule of reason which supports the USCIS policies which have caused the challenged delays." *Id.* Instead, Congress has "indicated that USCIS retains limited discretion as to the timing of the adjudication of asylum applications under exceptional circumstances." *Yan*, 2023 WL 4053410, at *4.

Courts also consider the length of the delay and as discussed above, have found that even delays exceeding five years can be reasonable. *See Su*, at 1178 (collecting cases). While I



United States District Court
Northern District of California

recognize that the three years that have elapsed since Liu filed her application constitutes a longer than ideal time to wait, the length of delay is not *per se* unreasonable. This factor is neutral.

**3. Human health and welfare, and nature of interests**

The third and fifth *TRAC* factors overlap; they concern "whether human health and welfare are at stake and the nature and extent of the interests prejudiced by delay." *Id.*, at 1178-79. Liu asserts that her child's college admissions process has been thrown into a state of limbo as her family awaits a decision on Liu's asylum application. Liu spends her entire opposition brief explaining this prejudice, choosing to focus upon it rather than any of USCIS's arguments about jurisdiction or the other *TRAC* factors. *See generally*, Opposition/Response [Dkt. No. 19]; *see also* Declaration of Yun Liu ("First Liu Decl.") [Dkt. No. 9-1]. While I recognize the unfortunate uncertainty that Liu's family is in as her children undertake their next phase of education, the situation is not so grave as to tip the third and fifth *TRAC* factors toward her. Courts have repeatedly found that these factors favor USCIS where far more grave concerns for human health and welfare have been alleged. *See Su*, at 1178-79 (citing cases where courts have found that when an asylum applicant is able to legally live and work in the United States pending adjudication of her application, these *TRAC* factors favor the government). USCIS states in its motion that Liu "has a valid EAD," meaning she is authorized to work." USCIS Motion 22. Liu does not contest that representation. The third and fifth *TRAC* factors favor USCIS.

**4. Effect of expediting delayed action**

The fourth *TRAC* factor "consider[s] the agency's competing priorities." *Indep. Mining Co.*, 105 F.3d at 511. In cases like this one, the competing priority is the other asylum applications that have been filed, including those asylees in similar situations to Liu and whose applications were filed before Liu's.

Courts have observed that "granting relief to the Plaintiff simply moves [him or her] to the front of the line at the expense of all other applicants who may not have filed an application for mandamus relief." *Varol*, 420 F. Supp. 3d at 1098. Under circumstances like these, "where a judicial order putting an individual at the head of the queue would simply move all others back one space and produce no net gain," courts have declined to grant relief akin to what Liu seeks



United States District Court
Northern District of California

United States District Court
Northern District of California

today. *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (internal quotation omitted); *see also Varol*, 420 F. Supp. 3d at 1098 (explaining that "it was sufficient to deny relief based on the fourth factor alone" where "advancing [the plaintiff's] asylum application for interview and adjudication may negatively affect other applicants in a similar position"); *Yan*, 2023 WL 4053410, at *5, 2023 (same); *Teymouri*, 2022 WL 18717560, at *5 ("advancing Plaintiff's Application would not serve a higher or competing priority, but would instead merely delay the adjudication of all other applicants"). The fourth *TRAC* factor favors USCIS.

**5. Impropriety**

Finally, the sixth *TRAC* factor considers whether there was any impropriety by the agency. *Indep. Mining Co.*, 105 F.3d at 510. Liu cites no impropriety by USCIS. This factor is neutral. *See Su*, at 1179 (where no impropriety was shown, the sixth *TRAC* factor weighed neutrally); *Yan*, 2023 WL 4053410, at *5 (same).

In sum, most of the *TRAC* factors favor USCIS, and weigh against granting Liu the relief she seeks under the APA. USCIS is entitled to summary judgment on Liu's APA claim.

**CONCLUSION**

For the foregoing reasons, USCIS' motion for summary judgment is GRANTED, Liu's is DENIED, and this case is dismissed. The Clerk shall enter judgment for the defendant.

**IT IS SO ORDERED.**

Dated: August 25, 2025

William H. Orrick
United States District Judge